**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **AMBER GELINAS, DMD** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.:** |
| | ) | |
| **v.** | ) | **1:25-cv-00004** |
| | ) | |
| **SOUTHERN DENTISTRY, P.C.,** | ) | **JURY DEMAND** |
| **MICHAEL A. NEBRIG, DMD,** | ) | |
| **CHARLES DEMERANVILLE, DMD,** | ) | |
| **and ROBERT WEINECKER, DMD,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Amber Gelinas, DMD, by and through her attorneys, as and for Plaintiff's Complaint and Jury Demand in this action against Southern Dentistry, P.C., Michael Nebrig, DMD, Charles Demeranville, DMD, and Robert Weinecker, DMD, respectfully alleges as follows:

### PRELIMINARY STATEMENT

1.    This is an action against Southern Dentistry, P.C., for legal and equitable relief to redress unlawful discrimination and retaliation against Plaintiff Amber Gelinas. The suit is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k), and the Civil Rights Act of 1991, 42 U.S.C. §§2000e *et seq.,* (hereinafter "Title VII") and the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg-2000-gg-6, (hereinafter the "PWFA") which provide for relief from discrimination on the basis of sex, pregnancy, and retaliation. Plaintiff seeks declaratory, injunctive, and other equitable remedies, including reinstatement and back pay, as well as compensatory and punitive damages, attorneys' fees, and expenses. Plaintiff also asserts

supplemental state law claims against Defendants Southern Dentistry, P.C., Michael Nebrig, DMD, Charles Demeranville, DMA, and Robert Weinecker, DMD, as set out below. Defendants' unlawful conduct was knowing, malicious, willful, and wanton and/or showed a reckless disregard for Plaintiff's protected rights, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages. Plaintiff requests a trial by jury on all issues triable by a jury.

### JURISDICTION AND VENUE

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §2000e-5(f)(3).

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(g). Employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern Division of the Southern District of Alabama.

4.  This court may exercise supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1376.

### PARTIES

5.  Plaintiff Amber Gelinas (hereinafter referred to as "Plaintiff" or "Dr. Gelinas") is a female citizen of the United States. Plaintiff is a licensed dentist and was employed by Defendant Southern Dentistry, P.C. as a dentist during the relevant time period.

6.  Defendant Southern Dentistry P.C. (hereinafter referred to as "Defendant" or "Southern Dentistry") is an employer subject to suit under Title VII and the Pregnant Workers Fairness Act and is subject to suit under Alabama law. Defendant has more than fifteen (15) employees and conducted business in Baldwin County Alabama at all relevant times.

7.     Defendant Michael Nebrig, DMD (hereinafter "Defendant" or "Dr. Nebrig") is a male citizen of the United States and a resident of Baldwin County, Alabama. Dr. Nebrig is subject to suit under Alabama law.

8.     Defendant Charles Demeranville, DMD (hereinafter "Defendant" or "Dr. Demeranville") is a male citizen of the United States and a resident of Baldwin County, Alabama. Dr. Demeranville is subject to suit under Alabama law.

9.     Defendant Robert Weinacker, DMD (hereinafter "Defendant" or "Dr. Weinacker") is a male citizen of the United States and a resident of Baldwin County, Alabama. Dr. Weinacker is subject to suit under Alabama law.

### ADMINISTRATIVE PREREQUISITES

10.    Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII and the Pregnant Workers Fairness Act.

11.    On or about December 17, 2023, Plaintiff timely filed a charge of discrimination with the EEOC (Charge Number 420-2024-01104) alleging, *inter alia*, discrimination based on sex, pregnancy, and retaliation. Exhibit 1.

12.    On October 7, 2024, the EEOC issued a "Dismissal and Notice of Rights" letter to Plaintiff. Exhibit 2.

13.    Plaintiff timely filed this action within 90 days of receipt of notice of right to sue.

### STATEMENT OF FACTUAL ALLEGATIONS

***Dr. Gelinas possessed the education, training and work experience to practice dentistry in the State of Alabama.***

14.    Dr. Gelinas attended the University of Connecticut from 2008 until 2012 and was awarded a Bachelor of Science degree in Physiology & Neurobiology in 2012.

15.   Dr. Gelinas attended the University of New England College of Dental Medicine from 2013 until 2017 and was awarded a Doctor of Dental Medicine (D.M.D.) degree in 2017.

16.   Dr. Gelinas completed her residency and worked as a dentist between 2017 and 2021.

17.   During November 2021, Dr. Gelinas and her husband moved to Baldwin County, Alabama.

18.   Throughout the relevant time period, Dr. Gelinas possessed all of the necessary education, training, certifications, and experience necessary to engage in the practice of dentistry in the State of Alabama and was otherwise qualified for her position as a dentist at Southern Dentistry.

### *Southern Dentistry hired Dr. Gelinas as a dentist, and she performed her job duties in an exemplary manner.*

19.   Throughout the relevant time period, Dr. Nebrig was the sole owner and operator of Southern Dentistry, which had offices in Daphne, Alabama and Robertsdale, Alabama.

20.   During November 2021, Dr. Gelinas sought employment as a dentist in Baldwin County, Alabama and applied for a dentist position Southern Dentistry advertised on social media.

21.   On or about November 29, 2021, Dr. Nebrig hired Dr. Gelinas to work for Southern Dentistry as a dentist.

22.   Southern Dentistry offered Dr. Gelinas a compensation plan which consisted of thirty-two percent (32%) of the gross of all funds collected from her work as a dentist. Dr. Nebrig also promised Dr. Gelinas that she would work five days per week and would have two dental chairs available to her when she worked.

23.   Dr. Gelinas was capable of using dental chairs at a time, which meant she was more productive than if she could only work a single chair, and which increased her ability to generate revenue and, thus, her compensation.

24. Dr. Gelinas was a loyal and dedicated employee and always performed whatever duties she was asked to perform at whichever office Southern Dentistry needed her.

25. From the time Dr. Gelinas was hired until she took maternity leave, Dr. Gelinas worked five days a week either in the Daphne office or the Robertsdale office and was always permitted access to two dental chairs.

26. From the time Dr. Gelinas was hired until she took maternity leave, Dr. Gelinas never had any issues with how she was treated or, as far as she was aware, had any issues with her compensation.

### *Dr. Gelinas promptly informed Southern Dentistry about her pregnancy and sought reasonable accommodation.*

27. On or about October 17, 2022, Dr. Gelinas informed Southern Dentistry that she was pregnant.

28. Dr. Gelinas informed Southern Dentistry that her OB-GYN had instructed her that she could not work around nitrous oxide, and so that patients who required nitrous oxide would need to be scheduled with another dentist.

29. Southern Dentistry ignored Dr. Gelinas's request and continued to schedule patients who required nitrous oxide.

30. Dr. Gelinas complained to Lai and Dr. Nebrig several more times, until Southern Dentistry eventually accepted Dr. Gelinas's reasonable accommodation.

### *Southern Dentistry retaliated against Dr. Gelinas by subjecting her to a pattern of harassment.*

31. After Dr. Gelinas told Southern Dentistry that she was pregnant, Southern Dentistry retaliated against Dr. Gelinas by harassing her on a daily basis. Dr. Nebrig and Lai in particular became unrealistically hyper-critical of her work and both made a series of false

statements about her work performance and her professional abilities, which had not changed.

32.     During October 2022, Dr. Nebrig told Dr. Gelinas that a number of her patients issues with their fillings falling out. Dr. Nebrig lectured Dr. Gelinas in detail on the proper procedure for properly filling a tooth, a process with which Dr. Gelinas was already familiar. After Dr. Nebrig lectured her, Dr. Gelinas investigated and learned that these allegations were false.

33.     Southern Dentistry harassed Dr. Gelinas by calling Dr. Gelinas's personal cell phone about minor issues while she was off work, including during times when they knew she was off work to see her OB-GYN.

34.     Lai targeted Dr. Gelinas's assistants, both of whom were great employees. Both of them resigned during February 2023 because of how Lai treated them. As a result, Dr. Gelinas no longer had assistants with whom she was comfortable.

35.     Lai repeatedly criticized Dr. Gelinas regarding her attendance at and conduct during the morning huddles, which was false and malicious, because Lai did not criticize other dentists who rarely attended morning huddles. Dr. Gelinas scrupulously attended morning huddles at the office where she was scheduled to work.

36.     Lai criticized Dr. Gelinas for standing during morning huddles even though most of the team stood and told Dr. Gelinas that she and her assistants acted like "strangers" who did not want to be at the huddles.

37.     Lai called Dr. Gelinas into her office to tell her that her conduct was unprofessional and falsely claimed that Dr. Gelinas had been loud and mean to a female employee. Lai also

falsely claimed Dr. Gelinas was swearing loudly while walking down the hallway, which was false.

38. Lai told Dr. Gelinas that photographs she posted to her Facebook account were inappropriate, even though the material was appropriate and not controversial, because Lai claimed Dr. Gelinas was not allowed to socialize with her assistants outside of work.

39. During November 2022, Southern Dentistry hired Andria Spurlock as a scheduling coordinator. Lai instructed Spurlock that she should stay away from Dr. Gelinas because she was "trouble" and would get Spurlock in trouble.

40. Lai also told Spurlock that she was not allowed to talk to Dr. Gelinas at work about anything other than work matters and told her not to associate with Dr. Gelinas outside work.

### ***Dr. Gelinas complained to Dr. Nebrig, who failed to take corrective action.***

41. After several months of daily harassment, Dr. Gelinas broke down in tears when she arrived at work and asked to have a telephone call with Dr. Nebrig and Lai.

42. Dr. Gelinas complained to Dr. Nebrig and Lai that she was anxious and depressed due to harassment from Lai.

43. Dr. Nebrig failed to take any corrective action to end the harassment.

### ***Dr. Gelinas was diagnosed with a high risk pregnancy and told to reduce her work hours.***

44. During the seventeenth week of pregnancy, Dr. Gelinas experienced complications which required her to go to the emergency room during the seventeenth week of her pregnancy where she learned her pregnancy was "high risk" and that she must reduce her work hours.

45. Dr. Gelinas promptly informed Southern Dentistry about her diagnosis, which adjusted Dr. Gelinas's hours from 8:00 a.m. to 2:30 p.m., and continued to all her access to two dental chairs.

46. Just before Dr. Gelinas took maternity leave, Dr. Nebrig and Dr. Gelinas discussed Southern Dentistry's plans to expand the Daphne office. Dr. Nebrig stated: "We had a plan, but Dr. Amber [Gelinas] threw wrench into it when she decided to go and get pregnant."

47. On January 25, 2023, Lai told Dr. Gelinas that she would never hire another female dentist. Dr. Gelinas asked Lai if that statement was directed at her, and she said that "it just doesn't work."

48. Lai made several comments to different employees to the effect that she hoped that Dr. Gelinas's medical condition would worsen and that something would happen to her or her baby so that she would not come back to work.

49. Dr. Gelinas was planning her maternity leave and explored tele-dentistry opportunities. Dr. Gelinas asked Dr. Nebrig if they could discuss tele-dentistry, which would have allowed her to work during her maternity leave.

50. Dr. Nebrig told Dr. Gelinas: "I don't think it would benefit our office as we will have other doctors here."

51. Dr. Nebrig told Dr. Gelinas that when she returned from maternity leave, she could continue to work from 8:00 a.m. to 2:30 p.m., five days a week, and would continue to have two dental chairs.

### *Southern Dentistry hired two dentists to replace Dr. Gelinas and illegally submitted insurance claims using Dr. Gelinas's credentials.*

52. Just before Dr. Gelinas took maternity leave, Dr. Gelinas asked Dr. Nebrig about his plans to hire new dentists, and Dr Nebrig told Gelinas that he planned to use a process called *locum tenens* ("to hold the place of") to fill in for her while she was gone.

53. Dr. Gelinas told Dr. Nebrig and Lai that she did not believe Southern Dentistry should use her insurance credentials to file insurance claims while she was on maternity leave, and

called her malpractice insurance provider, which confirmed that Southern Dentistry should not file claims using her credentials.

54.    Southern Dentistry hired two new dentists, Dr. Charles Demeranville (male) and Dr. Weinacker (male) and filed insurance claims for them using Dr. Gelinas's insurance credentials.

55.    Upon information and belief, Dr. Demeranville was not competent and was terminated for malpractice and incompetence after he drilled through a young female patient's cheek.

56.    Even after Dr. Gelinas returned from maternity leave, Southern Dentistry continued to file insurance claims for Dr. Weineker using Dr. Gelinas's credentials. Upon information and belief, one of the reasons Southern Dentistry did not allow Dr. Gelinas to return to a full schedule was that Dr. Weinacker did not have the necessary credentials with several insurance companies so that Southern Dentistry would file insurance claims on procedures Dr. Weinecker performed using Dr. Gelinas's credentials on the theory that she was not available on those dates.

***Dr. Gelinas took maternity leave from June 10, 2023, until October 2, 2023.***

57.    Southern Dentistry approved Dr. Gelinas's maternity leave from June 19, 2023, through October 2, 2023, which was adjusted when Dr. Gelinas gave birth to her daughter nine days early.

58.    Dr. Gelinas promptly texted Lai to let her know she would need to begin maternity leave earlier than expected. Lai falsely told a group of employees that had learned this information from a Facebook post rather than from Dr. Gelinas.

59.    During her maternity leave, Dr. Gelinas attempted to communicate with Southern Dentistry about her status, but both Dr. Nebrig and Lai were slow to respond to her and were non-

committal about her schedule and whether she would continue to have access to two dental chairs when she returned from maternity leave.

60.    On August 16, 2023, Dr. Nebrig texted Dr. Gelinas and informed her that he would not honor their agreement for her to return to work five days per week and with two dental chairs. Dr. Gelinas reminded Dr. Nebrig about their agreement, and Dr. Nebrig replied that he was having to consider Dr. Weinacker and his employment.

61.    On September 9, 2023, Doctor Nebrig once again told Dr. Gelinas he had discussed Dr. Gelinas's situation with Dr. Weinecker and that he would not let her work the hours they had agreed upon nor could he provide two dental chairs.

62.    Dr. Nebrig told employees at Southern Dentistry that he had intended to give Dr. Gelinas her regular schedule back after she returned from her maternity leave but changed his mind after Dr. Weinacker came on board because he wanted to make sure Dr. Weinacker was happy.

63.    Lai told at least one Southern Dentistry employee that Southern Dentistry was treating Dr. Gelinas in this manner because "we want her to quit".

### ***Southern Dentistry reneged on its agreeement and reduced Dr. Gelinas's hours and access to dental chairs after she returned from maternity leave.***

64.    After Dr. Gelinas returned from maternity leave, Southern Dentistry permitted other dentists, including Dr. Weinacker, to work full schedules but did not do the same for Dr. Gelinas.

65.    Southern Dentistry scheduled large gaps in Dr. Gelinas's schedule, usually giving her a single morning appointment in the morning and a single appointment in the afternoon without any appointments in between.

66.    Dr. Gelinas complained to Dr. Nebrig that she should be permitted to return to her previous schedule since she took maternity leave and was the longer-term employee, and Dr. Nebrig responded that he needed someone to fill her role while she was out on maternity leave and he is still filling that role.

67.    Dr. Gelinas asked to work at the Robertsdale office on the days and hours she had previously worked, but Dr. Nebrig said he did not want to "complicate things" in Robertsdale because he was working on some things in Robertsdale.

68.    Dr. Weinacker, the male dentist who replaced Dr. Gelinas, was slower than Dr. Gelinas and less productive and lacked credentials with many of the insurance companies.

69.    After Dr. Gelinas returned from maternity leave, Southern Dentistry continued to permit him to work the days Dr. Gelinas had worked before her pregnancy and to use her credentials to file insurance claims.

### ***Dr. Gelinas noticed that Southern Dentistry was not paying her according to her compensation plan.***

70.    During Dr. Gelinas's maternity leave, she requested copies of Provider Productivity Reports from Southern Dentistry and requested a specific date range for each report.

71.    Southern Dentistry frequently sent printouts that were not dated correctly, which made it difficult for Dr. Gelinas to verify whether her compensation was accurate.

72.    After Dr. Gelinas returned from maternity leave, she printed her Provider Productivity Reports and noticed some discrepancies between the treatment she had provided and her compensation.

73.    Dr. Gelinas went back and forth with Lai, and Lai repeatedly told Dr. Gelinas that the calculations were correct even after Dr. Gelinas sent an explanation showing exactly how her compensation was not calculated correctly.

74.    After Dr. Gelinas returned from maternity leave, Southern Dentistry took funds from procedures that Dr. Gelinas had performed and distributed it to other dentists rather than to Dr. Gelinas.

75.    After Dr. Gelinas returned from maternity leave, Southern Dentistry took funds from procedures that Dr. Gelinas had performed and assigned them to Southern Dentistry rather than Dr. Gelinas.

76.    After Dr. Gelinas returned from maternity leave, Southern Dentistry routinely took patients that had more profitable procedures, such as crowns, away from Dr. Gelinas and gave them to other dentists, and routinely assigned less profitable procedures, such as cleaning and small fillings, and gave them to Dr. Gelinas rather than to the other dentists.

***Southern Dentistry continued to employ a retired dentist on a part-time basis and offered him shifts and dental chairs that Dr. Gelinas would have been offered beforehand.***

77.    Southern Dentistry occasionally employed Dr. Wingo, a retired dentist, exclusively to perform hygiene exams and emergency exams. Dr. Wingo no longer performed many routine dental procedures.

78.    Before Dr. Gelinas took maternity leave, Southern Dentistry only employed Dr. Wingo to cover for Dr. Nebrig or Dr. Robinson after it first offered Dr. Gelinas the opportunity to work and only if declined to do so.

79.    After Dr. Gelinas returned from maternity leave, when Dr. Robinson took vacation, Southern Dentistry no longer allowed Dr. Gelinas to fill in at the Robertsdale office.

80.    Instead, Southern Dentistry substituted Dr. Wingo for Dr. Robinson when she was on vacation.

***Southern Dentistry charged Dr. Gelinas for dental work she performed on her mother which she was led to believe would be free of charge.***

81.    Dr. Robinson performed dental work for her father, putting on crowns which required lab work, and Southern Dentristry did not charge her anything for dental services.

82.    Dr. Gelinas told Dr. Nebrig that her own mother needed dental work but did not have the finances to pay for a large treatment plan.

83.    Dr. Nebrig told Dr. Gelinas to have mother come in and assured her that Southern Dentistry would "take care of her."

84.    Dr. Gelinas assumed that Southern Dentistry would not charge her mother for dental services since it routinely declined to charge its employees for routine services and it had not charged Dr. Robinson's father for more extensive work.

85.    Dr. Gelinas performed all of the dental work except that Dr. Nebrig placed the implants.

86.    Southern Dentistry billed Dr. Gelinas's mother over $75,000. The bill included several thousand dollars for two implants that the manufacturer's representative had provided to Dr. Gelinas at no cost.

87.    After Dr. Gelinas's mother received the bill, Dr. Gelinas complained to Southern Dentistry about the bill and asked if there was anything that could be done to reduce the bill, since she had not expected any bill much less one so inflated.

88.    Dr. Nebrig stated that he would look at it and eventually told Dr. Gelinas that he could reduce the bill somewhat and that her mother could make payments for as long as she needed to. Later, Dr. Nebrig asked Dr. Gelinas if she wanted to begin paying with payroll deductions "just to whittle it down."

89.   Southern Dentistry has not resolved the discrepancy between its treatment of Dr. Roberston's father and Dr. Gelinas's mother. During December 2024, Southern Dentistry sent Dr. Gelinas's mother's bill to collections.

### *Dr. Nebrig and Lai made false and defamatory statements about Dr. Gelinas to employees and patients.*

90.   Dr. Nebrig and Lai repeatedly made false and defamatory comments about Dr. Gelinas in front of employees and patients. Dr. Nebrig said several times that he was very disappointed in Dr. Gelinas's dentistry and wished he had not hired her, since her work was not up to his standards. Lai made similar defamatory remarks to employees and patients including falsely claiming that Dr. Gelinas was not a good dentist and that her work was not up to minimum dentistry standards.

91.   On November 14, 2023, Dr. Nebrig and Lai falsely claimed that work Dr. Gelinas had done before maternity leave in Robertsdale was failing or that Dr. Gelinas's work had to be redone by Dr. Robinson. Dr. Nebrig and Lai told Dr. Gelinas if her work failed, and Dr. Robinson had to redo her work, then the money would come out of Dr. Gelinas's pay.

92.   Dr. Nebrig and Lai consistently treated Dr. Gelinas worse than the other doctors by talking down to her in front of others, giving her an undesirable schedule, less work, and negatively gossiping about her.

### *Dr. Gelinas was forced to resign due to the ongoing harassment she was forced to endure.*

93.   On or about April 5, 2024, Dr. Nebrig resigned because she could not no longer endure the discrimination and retaliatory harassment, which was continuous since she returned from maternity leave.

### FIRST CAUSE OF ACTION
### Discrimination (Failure to Accommodate) in
### Violation of the Pregnant Workers Fairness Act

94.    Plaintiff incorporates by reference each of the foregoing factual allegations as though fully set forth herein.

95.    Dr. Gelinas suffered from a known limitation which was related to, affected by, or arose out of pregnancy, childbirth, or a related medical condition.

96.    Dr. Gelinas informed Defendant Southern Dentistry of her pregnancy and her pregnancy-related medical condition and requested a reasonable accommodation, *i.e.*, to decline to work on patients who required nitrous oxide.

97.    Dr. Gelinas was a qualified employee under Section 102(6) of the PWFA, 42 U.S.C. § 2000gg(6), because she could perform the essential functions of the job with the accommodation of declining to work on patients who required nitrous oxide.

98.    Specifically, Defendant Southern Dentistry intentionally discriminated against Dr. Gelinas by failing to accommodate her known limitations which was related to, affected by, or arose out of her pregnancy-related medical condition in violation of the PWFA, 42 U.S.C. §2000gg-1(1).

99.    Specifically, Defendant Southern Dentistry intentionally discriminated against Dr. Gelinas when it refused to restore to her former position after she returned from maternity leave by failing to pay her according to the compensation plan that it had promised her when she was hired and according to which it had paid her prior to her maternity leave.

100.    Specifically, Defendant Southern Dentistry intentionally discriminated against Dr. Gelinas when it refused to schedule Dr. Gelinas to work a full schedule and to permit her access to two dental chairs even though it had room on its schedule and dental chairs available.

101.    Specifically, Defendant Southern Dentistry intentionally discriminated against Dr. Gelinas when it took more profitable procedures and assigned those procedures to other dentists and, in turn, assigned Dr. Gelinas less profitable procedures.

102.    The unlawful employment practices complained of were intentional and done with malice or with reckless indifference to Dr. Gelinas's federally protected rights.

103.    As a result of Defendant Southern Dentistry's intentional and unlawful conduct, Dr. Gelinas suffered and continues to suffer emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of income, and loss of employment benefits.

104.    This claim is brought against Defendant Southern Dentistry as Dr. Gelinas's employer according to the PWFA and not against Dr. Nebrig, Dr. Demeranville, and Dr. Weinecker.

### SECOND CAUSE OF ACTION
### Discrimination (Reduction in Compensation) in
### Violation of Title VII and the Pregnant Workers Fairness Act

105.    Plaintiff incorporates by reference each of the foregoing factual allegations as though fully set forth herein.

106.    Defendant Southern Dentistry intentionally discriminated against Dr. Gelinas on the basis of her sex and pregnancy with regard to job assignments, discipline, and other terms and conditions of employment.

107.    Specifically, Defendant Southern Dentistry intentionally discriminated against Dr. Gelinas when it refused to restore to her former position after she returned from maternity leave by failing to pay her according to the compensation plan that it had promised her when she was hired and according to which it had paid her prior to her maternity leave.

108. Specifically, Defendant Southern Dentistry intentionally discriminated against Dr. Gelinas when it refused to schedule Dr. Gelinas to work a full schedule and to permit her access to two dental chairs even though it had room on its schedule and dental chairs available.

109. Specifically, Defendant Southern Dentistry intentionally discriminated against Dr. Gelinas when it took more profitable procedures and assigned those procedures to other dentists and, in turn, assigned Dr. Gelinas less profitable procedures.

110. As a result of Defendant Southern Dentistry's intentional and unlawful conduct, Dr. Gelinas suffered and continues to suffer emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of income, and loss of employment benefits.

111. Defendant Southern Dentistry acted wantonly and with malice or with reckless indifference to Dr. Gelinas's federally protected rights.

112. This claim is brought against Defendant Southern Dentistry as Plaintiff's employer according to Title VII and the PWFA and not against Dr. Nebrig, Dr. Demeranville, and Dr. Weinecker.

**THIRD CAUSE OF ACTION**
**Retaliation (Harassment) in Violation of**
**Title VII and the Pregnant Workers Fairness Act**

113. Plaintiff incorporates by reference each of the foregoing factual allegations as though fully set forth herein.

114. Dr. Gelinas participated in an activity protected under federal law when she opposed an unlawful employment practice when she complained about pregnancy discrimination.

115. Dr. Gelinas engaged in protected activity when she asked Defendant Southern Dentistry for reasonable accommodation of her pregnancy. Dr. Gelinas had numerous conversations

with Dr. Nebrig and Lai about her pregnancy, her need for reasonable accommodation, and her need for maternity leave.

116.    Dr. Gelinas engaged in protected activity when she opposed Defendant Southern Dentistry's refusal to accommodate her pregnancy and her need for maternity leave.

117.    Dr. Gelinas participated in an activity protected under federal law when she filed a charge of discrimination with the EEOC which alleged, inter alia, sex discrimination, pregnancy discrimination, and retaliation.

118.    Defendant Southern Dentistry subjected Dr. Gelinas to an adverse employment action when it subjected her to a pattern of retaliatory harassment.

119.    Dr. Gelinas was subjected to adverse employment action because of her participation in protected opposition and protected activity.

120.    As a direct result of Dr. Gelinas's request for a reasonable accommodation and opposition to conduct prohibited by Title VII and the PWFA, Defendant Southern Dentistry retaliated against Dr. Gelinas by subjecting her to a pattern of retaliatory harassment.

121.    Defendant Southern Dentistry treated Dr. Gelinas less favorably than her similarly situated counterparts who did not engage in protected activity.

122.    Defendant Southern Dentistry interfered with Dr. Gelinas in the exercise and enjoyment of her rights under Title VII and the PWFA subjecting her to a pattern of retaliatory harassment.

123.    Defendant Southern Dentistry is liable for the acts and omissions of its agents and employees. Defendant Southern Dentistry, either directly or by and through its agents, retaliated against Dr. Gelinas and caused her injuries, damages, and losses.

124.   Defendant Southern Dentistry's retaliatory conduct was the direct and proximate cause of Dr. Gelinas's injuries, damages, and losses.

125.   Defendant Southern Dentistry's conduct was with malice or reckless indifference to Dr. Gelinas's federally protected rights under Title VII and the PWFA.

126.   This claim is brought against Defendant Southern Dentistry as Plaintiff's employer according to Title VII and the PWFA and not against Dr. Nebrig, Dr. Demeranville, and Dr. Weinecker.

**FOURTH CAUSE OF ACTION**
**Retaliation (Constructive Discharge) in Violation of**
**Title VII and the Pregnant Workers Fairness Act**

127.   Plaintiff incorporates by reference each of the foregoing factual allegations as though fully set forth herein.

128.   Dr. Gelinas participated in an activity protected under federal law when she opposed an unlawful employment practice when she complained about pregnancy discrimination.

129.   Dr. Gelinas engaged in protected activity when she asked Defendant Southern Dentistry for reasonable accommodations for her disabilities associated with her pregnancy. Dr. Gelinas had numerous conversations with Dr. Nebrig and Lai about her pregnancy, her need for reasonable accommodation, and her need for maternity leave.

130.   Dr. Gelinas engaged in protected activity when she opposed Defendant Southern Dentistry's refusal to accommodate her pregnancy and her need for maternity leave.

131.   Dr. Gelinas participated in an activity protected under federal law when she filed a charge of discrimination with the EEOC which alleged, inter alia, sex discrimination, pregnancy discrimination, and retaliation.

132. Defendant Southern Dentistry subjected Dr. Gelinas to an adverse employment action when it subjected her to a pattern of retaliatory harassment.

133. Dr. Gelinas was subjected to adverse employment action because of her participation in protected opposition and protected activity.

134. As a direct result of Dr. Gelinas's request for a reasonable accommodation and opposition to conduct prohibited by Title VII and the PWFA, Defendant Southern Dentistry retaliated against Dr. Gelinas by subjecting her to a pattern of retaliatory harassment.

135. Defendant Southern Dentistry treated Dr. Gelinas less favorably than her similarly situated counterparts who did not engage in protected activity.

136. Defendant Southern Dentistry interfered with Dr. Gelinas in the exercise and enjoyment of her rights under Title VII and the PWFA subjecting her to a pattern of retaliatory harassment.

137. Defendant Southern Dentistry required Dr. Gelinas to work under conditions that were so intolerable that a reasonable person in the employee's position would have been compelled to resign. Thus, Dr. Gelinas was constructively discharged.

138. Defendant Southern Dentistry is liable for the acts and omissions of its agents and employees. Defendant Southern Dentistry, either directly or by and through its agents, retaliated against Dr. Gelinas and caused her injuries, damages, and losses.

139. Defendant Southern Dentistry's retaliatory conduct was the direct and proximate cause of Dr. Gelinas's injuries, damages, and losses.

140. Defendant Southern Dentistry's conduct was with malice or reckless indifference to Dr. Gelinas's federally protected rights under Title VII and the PWFA.

141.   This claim is brought against Defendant Southern Dentistry as Plaintiff's employer according to Title VII and the PWFA and not against Dr. Nebrig, Dr. Demeranville, and Dr. Weinecker.

**FIFTH CAUSE OF ACTION**
**Breach of Contract in Violation of Alabama Law**

142.   Plaintiff incorporates by reference each of the foregoing factual allegations as though fully set forth herein.

143.   When Defendant Southern Dentistry hired Dr. Gelinas, Dr. Gelinas and Southern Dentistry entered into a contract in which it agreed to pay Dr. Gelinas thirty-two percent (32%) of the gross of all funds collected from the patients she treated. This agreement remained in place throughout Dr. Gelinas's employment with Defendant Southern Dentistry.

144.   Dr. Gelinas and Defendant Southern Dentistry entered into a contract in which it agreed to employ her five days per week from 8:30 a.m. until 2:30 p.m. and to provide her with two dental chairs during those hours when she returned from maternity leave.

145.   During Dr. Gelinas's maternity leave, Dr. Gelinas checked with Defendant Southern Dentistry on numerous occasions to confirm that she would work five days per week from 8:30 a.m. until 2:30 p.m. and to provide her with two dental chairs during those hours.

146.   Defendant Southern Dentistry repeatedly assured Dr. Gelinas that she could return to the same work schedule and would be provided with two dental chairs during those hours.

147.   After Dr. Gelinas returned from maternity leave, Defendant Southern Dentistry breached its agreement with Dr. Gelinas when it failed to pay her according to the terms of the pay plan to which the parties agreed when she was hired.

148. After Dr. Gelinas returned from maternity leave, Defendant Southern Dentistry breached its agreement with Dr. Gelinas and only permitted her to work two days per week and only provided her with one dental chair during those hours.

149. This claim is brought against Defendant Southern Dentistry and not against Dr. Nebrig, Dr. Dr. Demeranville, and Dr. Weinecker.

## SIXTH CAUSE OF ACTION
### Fraud in Violation of Alabama Law

150. Plaintiff incorporates by reference each of the foregoing factual allegations as though fully set forth herein.

151. When Defendant Southern Dentistry hired Dr. Gelinas, she was provided with a pay plan which represented that it would pay her thirty-two percent (32%) of the gross of all funds collected from the patients she treated.

152. Prior to taking maternity leave, Dr. Gelinas was not aware of any instances on which Defendant Southern Dentistry failed to pay her according to this pay plan.

153. After Dr. Gelinas returned from maternity leave, she noticed that her compensation dropped dramatically.

154. Dr. Gelinas informed Defendant Southern Dentistry that she believed she was not being properly compensated according to the pay plan.

155. Both Dr. Nebrig and Lai assured Dr. Gelinas that Defendant Southern Dentistry was paying her according to the same compensation plan which was in effect prior to her taking maternity leave. Both Dr. Nebrig and Lai claimed that the reduction in her compensation was due to the lag time between bills being sent out and funds being collected.

156. Instead, Dr. Nebrig and/or Lai funds collected from patients Dr. Gelinas treated were being allocated to other dentists, to Dr. Nebrig, or to Southern Dentistry generally.

157.    Dr. Gelinas complained repeatedly and was always reassured that Defendant Southern

Dentistry was paying her according to the compensation plan.

158.    This pattern continued from the time Dr. Gelinas returned from maternity leave until she

was constructively discharged.

159.    Dr. Gelinas was damaged because the allocation of funds collected from patient she treated

to other dentists or to Defendant Southern Dentistry directly and adversely affected her

compensation.

160.    This claim is brought against Defendants Southern Dentistry and Dr. Nebrig and not

against Dr. Demeranville and Dr. Weinecker.

### SEVENTH CAUSE OF ACTION
### Fraud (Dental Insurance) in Violation of Alabama Law

161.    Plaintiff incorporates by reference each of the foregoing allegations of fact as though fully

set forth herein.

162.    Defendants Southern Dentistry, Dr. Nebrig, Dr. Demeranville, and Dr. Weinecker

committed fraud when they submitted patient claims to insurance companies using Dr.

Gelinas's credentials.

163.    This claim is brought against all Defendants.

### EIGHTH CAUSE OF ACTION
### Identity Theft in Violation of the
### Consumer Identity Protection Act and Alabama Law

164.    Plaintiff incorporates by reference each of the foregoing allegations of fact as though fully

set forth herein.

165.    Defendants Southern Dentistry, Dr. Nebrig, Dr. Demeranville, and Dr. Weinecker violated

the Consumer Identity Protection Act, Ala. Code § 13A-9-191, *et seq.*, when it submitted

patient claims to insurance companies using Dr. Gelinas's credentials.

166.    Dr. Gelinas seeks five thousand dollars ($5,000) for each incident, or three times the actual damages, whichever is greater as well as reasonable attorney's fees and court costs pursuant to Ala. Code § 13A-8-199.

167.    Dr. Gelinas has a common law right to a civil remedy where she is the victim of criminal activity where that criminal act results in injury to the victim.

168.    This claim is brought against all Defendants.

### NINTH CAUSE OF ACTION
### Fraud (Mother's Dental Bill) in Violation of Alabama Law

169.    Plaintiff incorporates by reference each of the foregoing allegations of fact as though fully set forth herein.

170.    Defendants Southern Dentistry and Dr. Nebrig committed fraud when they billed Dr. Gelinas's mother for dental work that Dr. Gelinas was led to believe would be free, including bill her for an implant that the manufacturer's representative had provided free of charge.

171.    This claims is brought against Defendants Southern Dentistry and Dr. Nebrig and not against Dr. Demeranville and Dr. Weinecker.

### TENTH CAUSE OF ACTION
### Defamation in Violation of Alabama Law

172.    Plaintiff incorporates by reference each of the foregoing allegations of fact as though fully set forth herein.

173.    This is a claim arising under the laws of the State of Alabama prohibiting defamation.

174.    Dr. Nebrig and Lai made defamatory statements concerning Dr. Gelinas which were not subject to any privilege.

175. The statements made by Dr. Nebrig and Lai were either negligently made or intentionally made and are not true.

176. Defendant Southern Dentistry is liable to Dr. Gelinas for the conduct of its agents and employees pursuant to *respondeat superior* and/or because Defendant Southern Dentistry (a) knew or should have known about their unfitness and continued to employ them; (b) Defendant Southern Dentistry used the services of its agents and employees without proper instruction and with a disregard for the rights or safety of others; and (c) Defendant Southern Dentistry authorized, ratified and/or condoned the actions of its agents, which amounted to defamation.

177. Dr. Gelinas has been damaged financially and emotionally by these statements.

178. The defamatory statements made by Defendants rise to the level of "per se" defamation because such statements are presumed to cause damage to Dr. Gelinas.

179. As a proximate result of Defendants' actions, Dr. Gelinas suffered and continues to suffer emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of income and loss of benefits.

180. This claim is brought against Defendants Southern Dentistry and Dr. Nebrig and not against Dr. Demeranville and Dr. Weinecker.

### ELEVENTH CAUSE OF ACTION
### Intentional Infliction of Emotional
### Distress in Violation of Alabama Law

181. Plaintiff incorporates by reference each of the foregoing factual allegations as though fully set forth herein.

182. This is a claim arising under the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

183.   Defendant Dr. Nebrig and other agents and employees of Defendant Southern Dentistry discriminated against and retaliated against Dr. Gelinas after she sought reasonable accommodation for her pregnancy and after she took maternity leave.

184.   Defendant Southern Dentistry is liable to Dr. Gelinas for the conduct of its agents and employees pursuant to *respondeat superior* and/or because Defendant Southern Dentistry (a) knew or should have known about their unfitness and continued to employ them; (b) Defendant Southern Dentistry used the services of its agents and employees without proper instruction and with a disregard for the rights or safety of others; and (c) Defendant Southern Dentistry authorized, ratified and/or condoned the actions of its agents, which amounted to intentional infliction of emotional distress.

185.   Defendants Southern Dentistry and Dr. Nebrig engaged in the practices complained of herein with malice and/or with reckless indifference to Dr. Gelinas's rights.

186.   This behavior proximately caused Dr. Gelinas to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she seeks compensatory and punitive damages.

187.   This claim is brought against Defendants Southern Dentistry and Dr. Nebrig and not against Dr. Demeranville and Dr. Weinecker.

### TWELFTH CAUSE OF ACTION
### Negligent and Wanton Training, Supervision
### Retention and Termination in Violation of Alabama Law

188.   Plaintiff incorporates by reference each of the foregoing allegations of fact as though fully set forth herein.

189.   This is a claim arising under the law of the State of Albama to redress the negligent and/or wanton hiring, supervision, training, and retention of the supervisors and employees who

harassed Dr. Gelinas in retaliation for seeking reasonable accommodation of her pregnancy including but not limited to her need to take maternity leave.

190. Defendant Southern Dentistry had a duty to provide Dr. Gelinas with a reasonably safe work environment and to follow its own policies and procedures prohibiting sex discrimination, pregnancy discrimination, and retaliation and to protect Dr. Gelinas from such violations and retaliation in the workplace. Further, Defendant Southern Dentistry had a duty to follow the law.

191. Defendant Southern Dentistry failed to establish an adequate policy against discrimination and retaliation, failed to implement such a policy, failed to regularly and clearly communicate its policies to its supervisors and employees. In the alternative, Defendant Southern Dentistry failed to follow its policies.

192. Defendant Southern Dentistry negligently and/or wantonly failed to adequately supervise, train, and/or retain its agents or employees who discriminated against and harassed Dr. Gelinas, which proximately caused discrimination and retaliation against Dr. Gelinas.

193. This behavior proximately caused Dr. Gelinas to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she seeks compensatory and punitive damages.

194. This claim is brought against Defendant Southern Dentistry and not against Dr. Nebrig, Dr. Demeranville, and Dr. Weinecker.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant:

A.    A declaratory judgment that the actions, conduct, and practices of Defendants complained of herein violate the laws of the United States and the State of Alabama;

B.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    An order directing Defendant Southern Dentistry, P.C. to place Plaintiff in the position she would have occupied but for its discriminatory conduct in violation of Title VII and the PWFA, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security, and other benefits of employment;

E.    An award of damages for any and all other monetary and non-monetary losses suffered by Plaintiff, including compensatory and consequential damages, damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering, on all claims allowed by law in an amount to be determined at trial, plus prejudgment interest;

F.    Punitive damages on all claims allowed by law in an amount to be determined at trial;

G.    An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law;

H.    Pre- and post-judgment interest at the lawful rate; and

I.    Such other and further as the Court may deem just and proper, and any other relief as allowed by law.

Respectfully submitted this the 3rd day of January, 2025.

/s/ H. Wallace Blizzard
H. Wallace Blizzard
ASB 8969-B56H
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205.314.0593 (phone/text)
205.314.0793 (fax)
wblizzard@wigginschilds.com

/s/Daniel A. Hannan
Daniel A. Hannan
ASB-4492-N77D
DANIEL A. HANNAN, LLC
19090 Stout Lane
Gulf Shores, Alabama 36542
Work: 251-289-1326
Cell: 251-654-1360
Fax: 251-252-1331
dahlawyer@hotmail.com
hannanlaw@gmail.com

*Counsel for Plaintiff Amber Gelinas, DMD*

## JURY TRIAL DEMAND

Plaintiff requests a trial by struck jury on all questions of fact raised by his complaint.

/s/ H. Wallace Blizzard
H. Wallace Blizzard
ASB 8969-B56H
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0593 (phone/text)
(205) 314-0793 (fax)
wblizzard@wigginschilds.com

**Plaintiff requests this Honorable Court to serve upon the defendant via certified mail the following: Summons, Complaint.**

**Defendants' Addresses:**

Southern Dentistry, P.C.
c/o Michael Nebrig
751 Gayfer Avenue
Fairhope, AL 36532

Michael A. Nebrig, DMD
8206 Montgomery Ave
Elberta, AL 36530

Charles Demeranville, DMD
128 Du Rhu Dr
Mobile, AL 36608-1209

Robert Weinecker, DMD
5425 Springhill Woods Dr S D
Mobile, AL 36608-0701